No. 97-679

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 302

JAMES V. LEWIS,

Petitioner, Appellant and Cross-Respondent,

v.

B & B PAWNBROKERS, INC.,

Respondent, Respondent and Cross-Appellant,

and

THE BOARD OF PERSONNEL APPEALS

OF THE STATE OF MONTANA,

No

Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeff R. Lynch; Lynch Law Firm, Great Falls, Montana

For Respondent:

Gary M. Zadick; Ugrin, Alexander, Zadick & Higgins,

Great Falls, Montana

No

Submitted on Briefs: September 17, 1998

Decided: December 8, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Appellant, James V. Lewis (Lewis), appeals, and Respondent, B & B Pawnbrokers, Inc. (B&B), cross-appeals from the order of the District Court of the Eighth Judicial District, Cascade County. This case originated with a claim filed by Lewis with the Montana Department of Labor and Industry (the Department) for unpaid overtime compensation from B&B. The District Court ultimately dismissed Lewis' claim on the ground that he was estopped from raising the claim as a result of failing to notify his employer, B&B, prior to filing his claim, that he was legally entitled to unpaid overtime wages. We reverse and remand the issues raised on appeal by Lewis, and affirm the issue raised by B&B on cross-appeal.**

Issues Presented

**¶2. Lewis raises essentially two issues on appeal:**

**¶3. (1.) Did the District Court err in ruling that Lewis was estopped from claiming overtime compensation because he failed to provide notice to his employer, B&B, prior to filing his claim with the Department?**

¶4. (2.) Did the District Court err when it upheld the Department's use of a fixed salary for fluctuating hours method for purposes of computing Lewis' unpaid overtime wages?

¶5. B&B raises one issue on cross-appeal:

¶6. (3.) Did the District Court err in refusing to allow B&B credit for alleged lunch breaks taken by Lewis over the course of his employment?

Factual and Procedural History

¶7. Lewis worked for B&B, a licensed Montana Corporation, for five and one-half years as a full-time employee. He was employed with B&B for the period of June 1, 1987, through November 30, 1992. Lewis performed a variety of tasks while at B&B. Primarily, his duties consisted of delivery and repair. As a result, Lewis generally did not work behind the counter or on the sales floor in customer service. Instead, he spent a majority of his working time in the backroom of the pawnshop and the remainder of his working hours in a vehicle performing deliveries.

¶8. At the outset of his employment, Lewis worked from 8:30 a.m. to 5:30 p.m., Monday through Saturday, with one Saturday off every other week. Initially, B&B compensated Lewis $1,100 per month through an odd method of payroll installments. Over the course of each month, he received three separate paychecks. On the first and the fifteenth of each month, Lewis would receive one-quarter of his current monthly wages; on the tenth of the month, he would receive one-half of his monthly wages from the previous month.

¶9. Ron Tihista (Tihista), the owner of B&B, explained to Lewis at the outset of his employment that his monthly wage of $1,100 was a rounded-up approximation arrived at by taking the then-applicable minimum wage rate, adding $1.00 per hour to that rate, and assuming a 48 hour workweek every other week with those 16 additional monthly hours being paid at an overtime rate of 1½ times the regular rate. Tihista compensated Lewis for 16 hours of overtime every month because he initially required Lewis to work two 8-hour Saturdays per month. On July 1, 1988, B&B gave Lewis a $100 per month raise, bringing his monthly wage to $1,200. At the same time, due to the hiring of additional employees by B&B, Lewis was given an additional Saturday off each month. Lewis was paid this increased monthly wage

according to the same tripartite monthly payment scheme just discussed.

¶10. In 1990, B&B changed its payment schedule to semi-monthly paychecks. Then, in 1992, B&B again changed its payment scheme, this time to bi-weekly paychecks. However, B&B adjusted the amount per check so that Lewis' monthly pay remained static. Furthermore, irrespective of the actual number of days and hours worked for B&B each month, Lewis' gross wage remained at $1,200 per month. Lewis' pay was not docked for sick days or other days off, for holidays or vacations, or for leaving early from work. Lewis understood that he was being paid on an "hourly" basis, but that his monthly take-home pay would remain the same regardless of the actual number of days or hours worked per month.

¶11. The backroom of the pawnshop, where Lewis primarily worked, was stocked with food items, and also contained a refrigerator and microwave. Occasionally, Tihista would provide home-cooked food for employees to eat for lunch. In addition, Tihista also regularly provided his employees with free lunches on the first and fifteenth of each month, and on birthdays and holidays. Once a month, a saloon next door to the pawnshop would also offer B&B employees free lunch when the saloon had a barbecue.

¶12. Over the course of Lewis' employment, B&B had no formal policy regarding employee lunch breaks. Employees were not given a set lunch hour, but instead, usually ate lunch whenever they had a chance--sometimes interrupting their lunch break to wait on customers or to attend to other pressing business. They were also free to leave the pawnshop for lunch. Because of the nature of Lewis' duties, he was not subject to customer interruptions if he chose to stop and eat lunch. However, Lewis rarely took more than a couple of minutes off for lunch in the backroom. More often than not, Lewis did not take a lunch break at all, but continued to work while he ate lunch. On occasion, he did stop for lunch while out making deliveries.

¶13. Prior to November of 1992, neither Lewis nor B&B kept hourly records of work performed.[1] Tihista did keep track of employee days off, business holidays, birthdays, employment anniversaries, and other pertinent business dates in a daily planner. Lewis was placed on part-time status with B&B in October of 1992. Lewis received his last paycheck from B&B on November 17, 1992 and did not return to work for B&B after that date. Beginning November 19, 1992, after B&B was notified by the Department that Lewis had filed a claim for unpaid overtime compensation,

Tihista obtained a time-clock and began to require employees to punch-in and punch-out.

¶14. In his wage claim, Lewis alleged that B&B owed him $35,878.92 in unpaid wages. On August 12, 1993, the Wage and Hour Division of the Department issued its initial determination with respect to Lewis' wage claim, finding that B&B owed Lewis $3,322.84 in wages due, plus a 100% statutory penalty, amounting to a total award of $6,645.68, plus interest. This conclusion was based upon the assumption that Lewis had worked 8½ hours per day, six days a week, for the entire period in dispute. In addition, the Department gave credit to B&B for a 30-minute lunch break each day by Lewis, as well as for vacations, holidays, and other days that Lewis had taken off from work. The Department utilized the fluctuating workweek method to derive Lewis' unpaid overtime compensation.

¶15. B&B then requested a hearing on the Department's determination. The hearing officer issued a decision on January 31, 1995, awarding Lewis $8,477. On February 2, 1995, however, the hearing officer acted *sua sponte* to amend his award, reducing the amount owed Lewis to $4,236.23 due to the fact that Lewis had worked less than 8½ hours on most Saturdays throughout the course of his employment. Lewis then appealed the amended decision to the Board of Personnel Appeals (the Board). The Board conducted a hearing on May 10, 1995, and reversed the hearing officer's amended decision, remanding the case back to the Department for further consideration. This remand was based on the lack of evidence supporting a bona fide lunch break and the hearing officer's failure to properly compute interest on Lewis' unpaid wages. On October 18, 1995, the Department thus entered a new order on remand awarding Lewis $7,336.57, plus interest.

¶16. Lewis again appealed to the Board, and B&B cross-appealed. Following another hearing on January 23, 1996, the Board again reversed and issued a new order of remand. This time, the primary basis for the remand was the inaccuracy of the hearing officer's computation of unpaid hours of work. The Department issued a new order on remand, recalculating Lewis' award at $5,459.24, plus interest. Again, both Lewis and B&B appealed the Department's decision. After yet another hearing, the Board issued a final order affirming the hearing officer on July 25, 1996. From this order, both Lewis and B&B petitioned for judicial review in District Court.

¶17. On October 20, 1997, the District Court issued its order. The court affirmed the

Department's use of the fluctuating workweek method to compute Lewis' overtime compensation. In response to B&B's arguments, the court found that the Department properly refused to credit B&B for Lewis' alleged lunch breaks. Ultimately, however, the District Court dismissed Lewis' claim on the grounds of estoppel. The court concluded that Lewis could not raise a claim for overtime compensation because he had failed to properly notify B&B, prior to filing his wage claim, that he had been undercompensated during his employment. Lewis appeals the District Court's order, and B&B cross-appeals.

## Discussion

**¶18. In Langager v. Crazy Creek Products, Inc., 1998 MT 44, ¶ 13, 954 P.2d 1169,**

¶ 13, 55 St.Rep. 169, ¶ 13, we stated the applicable standard of review for administrative findings of fact and conclusions of law:

A district court must review an administrative agency's findings of fact to determine "whether the findings are clearly erroneous in view of the reliable, probative and substantial evidence in the whole record." *State Personnel Div. of Dep't of Admin. v. Board of Personnel Appeals, Div. of Dep't of Labor and Industry* (1992), 255 Mont. 507, 511, 844 P.2d 68, 71 (citing *Department of Revenue v. United Parcel Service, Inc.* (1992), 252 Mont. 476, 482, 830 P.2d 1259, 1263); *see also* § 2-4-704, MCA. Furthermore, the district court will uphold an agency's conclusion of law "if the agency's interpretation of the law is correct." *State Personnel Division of Dep't of Admin.*, 255 Mont. at 511, 844 P.2d at 71 (citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603). We in turn employ the same standards when reviewing the district court's decision, and must accordingly determine whether an agency's findings of fact are clearly erroneous and whether its conclusions of law were correct. *See Swan Corp. v. Department of Revenue* (1988), 232 Mont. 210, 213, 755 P.2d 1388, 1390.

## Issue 1

**¶19. Did the District Court err in ruling that Lewis was estopped from claiming overtime compensation because he failed to provide notice to his employer, B&B, prior to filing his claim with the Department?**

**¶20. In its order, the District Court stated:**

Based upon the record, it is clear that Mr. Lewis did not at anytime during his employment advise his employer that he viewed himself as having been paid inappropriately or having worked overtime for which he had not been paid. The Court concludes as a matter of law that Mr. Lewis is estopped from claiming compensation for overtime work, "where he failed to report it or to inform his employer that he expected compensation for it" until after he left the employment. *Celmer v. Schmitt*, [198 Mont. 271, 273,] 645 P.2d 946, 948 (Mont. 1982)[.]

**¶21. Lewis argues that the District Court erred in applying a contract defense--estoppel or waiver--to defeat a statutory entitlement, where the Montana Legislature has not expressly approved of such a defense. To the extent that the court relied on the estoppel language just quoted from Celmer v. Schmitt (1982), 198 Mont. 271, 645 P.2d 946, Lewis urges this Court to either clarify or overrule *Celmer* on that point. Moreover, Lewis points to the subsequent decision of Hoehne v. Sherrodd, Inc. (1983), 205 Mont. 365, 668 P.2d 232, as directly contrary to the proposition in *Celmer* upon which the District Court based its estoppel holding.**

**¶22. We agree with Lewis. While the freedom to contract in Montana is broad, it is not absolute. "Parties cannot privately waive statutes enacted to protect the public in general." Phoenix Phys. Ther. v. Unemployment Ins. Div. (1997), 284 Mont. 95, 104, 943 P.2d 523, 528; *see also* § 1-3-204, MCA ("a law established for a public reason cannot be contravened by a private agreement"). In the context of Montana's employment laws, we long ago recognized that an employee may waive the advantage of any provision of law that was intended solely to benefit that employee, provided that such a waiver is not violative of public policy. Shea v. North-Butte Mining Co. (1919), 55 Mont. 522, 535, 179 P. 499, 503.**

**¶23. More recently, however, we cautioned that "an employee may not enter into an agreement which operates to waive compensation for overtime actually worked." Garsjo v. Department of Labor and Indus. (1977), 172 Mont. 182, 188, 562 P.2d 473, 476. Because "overtime premiums are for the protection and benefit of the general public, private waiver is contrary to public policy." *Hoehne*, 205 Mont. at 370, 668 P.2d at 234 (citing State ex rel. Neiss v. District Court (1973), 162 Mont. 324, 328, 511 P.2d 979, 981; § 1-3-204, MCA). In spite of these authorities, B&B asserts that the *Celmer* decision is controlling. In addition, B&B cites decisions from other jurisdictions where the doctrine of estoppel has been applied in allegedly similar circumstances to bar a claim. First, we note that the estoppel language in the *Celmer***

**opinion, as cited in the District Court's order, is mere dictum. Second, we decline to consider authority from other jurisdictions in this case, because, as Lewis persuasively argues, the *Hoenhe* decision is directly on point.**

**¶24. In *Hoenhe*, the employer argued that the employee should be estopped from claiming overtime compensation because he failed to inform the employer that he expected overtime pay. *Hoehne*, 205 Mont. at 369, 668 P.2d at 234. There, we recognized that the laws of Montana that ensure an**

employee's right to receive overtime pay . . . are expressions of public policy created to protect workers, and restraining those from withholding overtime pay is vindication of a public right rather than a private right. Withholding wages due, such as overtime pay, is considered a continuing public offense.

*Hoehne*, 205 Mont. at 369, 668 P.2d at 234. Therefore, contrary to B&B's position in this appeal that Lewis' silence constitutes a waiver of his right to unpaid overtime compensation, we stated in Hoehne that allowing an "implied waiver of . . . overtime payments . . . would be contrary to public policy." Hoenhe, 205 Mont. at 370, 668 P.2d at 235. Accordingly, we held that an employee's failure to assert such right does not constitute waiver. Hoenhe, 205 Mont. at 370, 668 P.2d at 235; cf. Rosebud County v. Roan (1981), 192 Mont. 252, 259, 627 P.2d 1222, 1225 (concluding that an employer's liability for unpaid overtime compensation cannot be made contingent upon the employee filing an overtime claim prior to the end of employment).

**¶25. Today, we reaffirm the *Hoenhe* decision. A claimant may not, of his or her own accord, contractually bargain away the statutory right to overtime compensation. The laws of Montana that ensure overtime compensation have been established for public benefit, and in the absence of a specific statutory exemption, may not be compromised by private agreement. Section 1-3-204, MCA; *cf.* State ex rel. Neiss v. District Court (1973), 162 Mont. 324, 328, 511 P.2d 979, 981 (holding that, because minimum wage provisions exist for the benefit of the public as a whole, a claimant may not contractually bargain away the statutory right to a minimum wage). We hold that Lewis cannot be estopped from bringing his wage claim as a result of a failure to notify his employer, prior to bringing his claim, that he was entitled to unpaid overtime compensation. To the extent that the language in *Celmer* suggests otherwise, it is overruled.**

Issue 2

¶26. Did the District Court err when it upheld the Department's use of a fixed salary for fluctuating hours method for purposes of computing Lewis' unpaid overtime wages?

¶27. Having decided that Lewis' claim for unpaid overtime compensation was properly before the court, we must now turn to the question of the appropriate method for determining the unpaid overtime wages owed Lewis by B&B. Aside from certain statutory exemptions inapplicable in this case, *see* §§ 39-3-405(2), (3) and 39-3-406, MCA, employers in Montana are required to compensate any employee that works in excess of 40 hours per week at an overtime "rate of not less than 1½ times the hourly wage rate at which he [or she] is employed." Section 39-3-405(1), MCA.

¶28. Lewis contends that the District Court erred in upholding the Department's use of the fluctuating workweek method, and that this error resulted in Lewis' unpaid overtime compensation being improperly computed. B&B counters that the fluctuating workweek method was properly applied because of a clear understanding between Lewis and B&B that this was the agreed-upon method of salaried compensation. B&B further asserts that Lewis admitted at trial that the Department's computation of unpaid overtime according to the fluctuating workweek method was correct, and that Lewis should therefore be bound by this judicial admission on appeal.

¶29. After a thorough review of the administrative record, we conclude that the District Court erred in upholding the Department's use of the fluctuating workweek method. Primarily, the District Court based its conclusion that the Department properly applied the fluctuating workweek method upon Lewis' testimony in the administrative proceeding, which suggested that "he understood that when his hours went up or down, his paycheck remained the same." We do not agree that an after-the-fact acknowledgment by Lewis is sufficient to support the application of the fluctuating workweek method. Nor do we agree with the court that the course of conduct between the parties, such as Lewis' "acceptance of regular pay checks over his entire employment," is sufficient to support the application of the fluctuating workweek method.

¶30. The "[f]ixed salary for fluctuating hours" method is governed by Rule 24.16.2512(2)(e)(i), ARM, which permits an employee to be paid on a fixed salary basis for hours of work that may fluctuate from week to week. In order to qualify

under Montana law for this type of salaried compensation, however, there must be

<u>a clear mutual understanding</u> [between employer and employee] . . . that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period . . . .

Rule 24.16.2512(2)(e)(i), ARM (emphasis added). In particular, "<u>unless the employee clearly understands</u> that the salary covers whatever hours the job may demand in a particular workweek," the fluctuating hours method "may not be used." Rule 24.16.2512(2)(e)(iii), ARM (emphasis added).

¶31. In Craver v. Waste Mgt. Partners of Bozeman (1994), 265 Mont. 37, 874 P.2d 1, this Court further emphasized that Rule 24.16.2512(2)(e), ARM, only "permits an employer to use the salaried, fluctuating pay scheme <u>as long as the employer and employee mutually agree</u> to the scheme." *Craver*, 265 Mont. at 43, 874 P.2d at 4 (emphasis added). Conversely, where an employer and employee do not "mutually agree" to a fluctuating hours salary, "[t]his fact alone is fatal to any allegation that [the employer's] pay scheme fit the requirements of § 24.16.2512[(2)](e), ARM." *Craver*, 265 Mont. at 43, 874 P.2d at 4. In *Craver*, there was "no express written or oral consent" by the employees to the calculation of salaries by the employer according to the fluctuating workweek method. *Craver*, 265 Mont. at 40, 874 P.2d at 2-3. Consequently, we held that the trial court did not err in finding that the employer had violated Montana's wage laws in calculating wages due on the basis of a salaried, fluctuating hours pay scheme. *Craver*, 265 Mont. at 43, 874 P.2d at 4.

¶32. In this case, the record is void of a clear, mutual understanding between Lewis and B&B that would support a proper application of the fluctuating workweek method. There was no express, written employment contract between Lewis and B&B. Lewis was employed by Tihista on the basis of an oral--albeit confused--understanding of his employment conditions. Lewis testified that he initially thought he was receiving a "monthly salary" plus "commission" from Tihista, based upon the peculiar, tripartite monthly payment scheme previously discussed. Lewis further testified that, when B&B later switched to bi-weekly paychecks, he understood that his monthly wage was based upon an "hourly" rate, even though his monthly pay never fluctuated according to hours actually worked.

¶33. Tihista, in turn, testified that all of his employees worked set hourly schedules and that Lewis "was paid hourly from the day he started." He testified that he orally agreed with Lewis at the outset of employment that Lewis would be paid a monthly wage, predicated upon a regular hourly rate of minimum wage plus $1.00 for the first forty hours per week, and an overtime rate of 1½ times the regular hourly rate for the sixteen hours of required overtime per month. Tihista further testified that he never docked the pay of any of his employees for days missed from work, or for weeks where their hours fell below the amount that their monthly wages were based upon, because he wanted them "to be able to make more money [at B&B] than at a comparable job." B&B's accountant, Jim Koontz, acknowledged in testimony that B&B had represented to the Department, in responding to Lewis' wage claim, that Lewis was an hourly "wage employee."

¶34. Like *Craver*, the simple fact that there was no mutual understanding between Lewis and B&B regarding a fixed salary for fluctuating hours is fatal to the District Court's decision. Contrary to the court's implied holding that a tacit understanding by an employee is sufficient to support application of the fluctuating workweek method, Montana law requires a clear, mutual understanding between employer and employee before this particular form of salaried compensation may be applied. That Lewis' monthly wage remained the same irrespective of the actual number of hours worked appears to have been more a function of generosity on Tihista's part, than the result of a mutual understanding between Lewis and B&B that Lewis was being paid a fixed salary for fluctuating hours. The record suggests that if there was any oral understanding between Lewis and Tihista, it was that Lewis was to be compensated as an "hourly" rate employee. We hold that the court erred in upholding the Department's use of the fixed salary for fluctuating hours method for purposes of computing Lewis' unpaid overtime compensation.

¶35. Since we determine that the fluctuating workweek method was incorrectly applied in this case, we need not address Lewis' additional arguments as to how his unpaid overtime compensation was incorrectly computed pursuant to the fluctuating workweek method. Nor need we address B&B's contention that Lewis should be bound on appeal by his judicial admission below that, if the fluctuating workweek method applied, his unpaid overtime compensation was correctly computed by the Department under that method. Pursuant to our conclusion that the fluctuating workweek method was misapplied, we further hold that Lewis' unpaid overtime compensation was incorrectly computed. We remand to the District Court for

**remand to the Department, with instructions that the Department shall recompute Lewis' unpaid overtime wages based on this Court's conclusion that he was an hourly employee.**

Issue 3

**¶36. Did the District Court err in refusing to allow B&B credit for alleged lunch breaks taken by Lewis over the course of his employment?**

**¶37. B&B asserts that the District Court erred in upholding the Department's determination that B&B was not entitled to a credit for lunch breaks allegedly taken by Lewis. The Department found that B&B failed to adduce sufficient evidence that Lewis consistently took a "bona fide meal period" of 30 minutes or more per workday. The District Court, while noting that there was some evidence in the record that Lewis did take lunch breaks, concluded that the Department's determination was nevertheless supported by substantial credible evidence in the record. We agree with the District Court's conclusion.**

**¶38. Rule 24.16.1006, ARM, governs "rest and meal periods," for which an employer may be given credit in calculating unpaid overtime compensation:**

Bona fide meal periods are not worktime. . . . These are rest periods. <u>The employee must be completely relieved from duty for the purposes of eating regular meals</u>. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. <u>The employee is not relieved if he [or she] is required to perform any duties, whether active or inactive while eating</u>. [Emphasis added.]

Section 24.16.1006(2)(a), ARM. Furthermore, the rule does not require that an employee be permitted to leave the premises in order to qualify as a bona fide meal period, provided that the employee "is otherwise <u>completely freed from duties during the meal period</u>." Section 24.16.1006(2)(b), ARM (emphasis added).

**¶39. B&B alleges two errors: one, that the Department's factual finding that Lewis never took a bona fide lunch break was clearly erroneous because there was credible evidence that Lewis did frequently take a lunch break of thirty to forty-five minutes; and two, that the Department's conclusion on the lunch break issue was a legal error**

to the extent that it implies a duty on the part of an employer "to see that a worker not perform any work [during lunch] for which he [or she] doesn't wish to provide compensation."

¶40. With respect to B&B's alleged factual error, we emphasize that our standard of review of an administrative agency's findings of fact is--like that of the District Court--deferential. We may not substitute our judgment for that of the agency's when it comes to the weight of the evidence on questions of fact. *See* § 2-4-704(2), MCA. It is true that Lewis' witness, Carol Iontosca, provided a statement that Lewis did regularly take lunch breaks of thirty to forty-five minutes. However, in its order, the District Court noted that "[t]he hearing officer . . . was either unaware of this statement or did not rely upon it." As to the other witness testimony regarding lunch breaks allegedly taken by Lewis, while the Department was "not convinced the claimant never stopped for even five minutes," it concluded that B&B produced insufficient "evidence to suggest [that Lewis regularly] stopped for any appreciable length of time, such as an hour or even a half an hour, except on occasions when out on a delivery with another worker." After reviewing the administrative record, we agree with the District Court that the Department's factual findings on the lunch break issue were supported by substantial credible evidence.

¶41. Concerning B&B's alleged legal error, we are similarly unconvinced. As previously stated, we review an administrative agency's decision to determine if its conclusions of law are correct. *Steer, Inc.*, 245 Mont. at 474, 803 P.2d at 603. B&B contends that the Department's citation of Garsjo v. Department of Labor and Indus. (1977), 172 Mont. 182, 562 P.2d 473, in support of its proposition that B&B failed in its "responsibility" to ensure that Lewis not perform any work during lunch, is legal error. B&B is correct in recognizing that *Garsjo* did not specifically address the issue of lunch breaks, but rather, principally concerned hourly record keeping by an employer. While is unclear from the Department's decision what specific notion the *Garsjo* decision was cited as supporting, we think it safe to say that the Department was referring to the simple proposition that an employer has a duty under Montana's wage laws to record the hours worked by its employees. *See Garsjo*, 172 Mont. at 188-89, 562 P.2d at 476.

¶42. Where an employer fails in that duty, as B&B has failed in this case, an employee is allowed to validate its claim of improper compensation by introducing " 'sufficient evidence to show the amount and extent of that work as a matter of just

and reasonable inference.' " Wage Claim of Holbeck v. Stevi-West, Inc. (1989), 240 Mont. 121, 126, 783 P.2d 391, 394-95, *quoting Garsjo*, 172 Mont. at 189, 562 P.2d at 476. Here, Lewis produced sufficient evidence to show that he generally did not take a lunch break of any appreciable length of time, and that he more often than not continued to work while eating. Therefore, the Department's legal determination, upheld by the District Court, appears to have been based in part upon B&B's failure to record the hours that Lewis actually worked. This record keeping shortcoming, in violation of Montana's minimum wage and overtime laws, resulted in a failure of proof for B&B with regards to the lunch break issue.

¶43. Moreover, this Court will defer to an agency's legal determination where, as here, that agency is interpreting a statute that it has been authorized by the legislature to administer. Waste Mgt. Partners of Bozeman v. Department of Pub. Serv. (1997), 284 Mont. 245, 249, 944 P.2d 210, 213 (citing Norfolk Holdings v. Department of Revenue (1991), 249 Mont. 40, 44, 813 P.2d 460, 462). The Department has been delegated rulemaking authority by the Montana Legislature to carry out the purposes of Montana's minimum wage and overtime laws. *See* § 39-3-403, MCA. Here, the applicable rule specifically states that an employer may still qualify for a bona fide meal period with respect to an employee, like Lewis, who remains on the work premises during lunch, if that employee "is otherwise completely freed from duties during the meal period." Rule 24.16.1006(2)(b), ARM. Given the circumstances of this case, we cannot say that the Department incorrectly interpreted Rule 24.16.1006, ARM, in concluding that B&B had a responsibility to monitor Lewis during lunch periods to ensure that he was not working.

¶44. Here, even though the Department found that B&B did not specifically require work of Lewis during lunch, it is apparent that Lewis was not completely freed from his duties at the pawnshop or otherwise expressly directed to take a lunch break by B&B. Tihista testified that B&B had no "set rule" requiring employees to take lunch breaks. Tihista further acknowledged that he was aware that Lewis occasionally worked while eating. As long as Tihista permitted Lewis to work while eating lunch, Lewis must be properly compensated for wages due, even if this includes overtime compensation for working through lunch breaks. *Cf. Holbeck*, 240 Mont. at 126, 783 P.2d at 395 (rejecting claim of bowling alley employer that it should not have to pay overtime compensation for time that employee had spent bowling while on duty, because employer was aware of and did not prohibit this activity). Had B&B simply utilized a time-clock from the beginning, and required its employees to punch out for

lunch periods, this dispute over alleged lunch breaks by Lewis would likely not even be at issue.

¶45. With respect to the lunch break issue, we hold that the Department's factual findings are not clearly erroneous, and that its legal conclusions are correct. Accordingly, we affirm the District Court's conclusion that B&B is not entitled to credit for alleged lunch breaks taken by Lewis over the course of his employment.

¶46. In conclusion, we hold that the District Court erred as a matter of law in holding that Lewis was estopped from bringing his wage claim because of a failure to notify his employer, B&B, prior to bringing his claim, that he was entitled to unpaid overtime compensation. In addition, we hold that the District Court erred as a matter of law in upholding the Department's use of the fluctuating workweek method for purposes of computing Lewis' unpaid overtime compensation. We reverse and remand to the District Court for remand to the Department, with directions that the Department shall recompute the overtime wages due Lewis based on our conclusion that he was employed at an hourly rate. Lastly, we hold that the District Court correctly upheld the Department's determination that B&B was not entitled to credit for lunch breaks allegedly taken by Lewis.

¶47. Affirmed in part, reversed and remanded in part.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

No

1. **1** This is true with one exception. Beginning September 1, 1992, Lewis briefly kept track of his hours worked on a calendar at home. These informal records indicate that Lewis worked either eight or nine hours per day for select workdays throughout the month of September.