JUSTICE NELSON
delivered the Opinion of the Court.
¶ 1 James A. Kemp, doing business as Yellowstone Mine Restaurant (collectively “Kemp”), appeals from the Judgment entered by the Sixth Judicial District Court, Park County, that affirmed the Board of Personnel Appeals’ (the Board) determination that Kemp owed Cynthia Showers (Showers) $5,204.83 for unpaid wages. We reverse.
¶2 Kemp raises two substantive issues on appeal, which we restate as follows:
¶3 1. Did the District Court err in determining that Showers was not an exempt employee under the Fair Labor Standards Act?
¶4 2. Did the District Court err in considering evidence of hours that Showers worked before the period of her claim to help determine how many hours she worked during the period of her claim?
¶5 Because we hold that the District Court erred as a matter of law in ruling that Showers was not an exempt employee, Issue 1 is dispositive, and it is unnecessary that we address Issue 2.
Factual and Procedural Background
¶6 Showers began working at the Yellowstone Mine Restaurant in Gardiner, Montana in 1989. Initially, Showers was a line cook and was paid an hourly wage. On June 16,1990, Kemp promoted Showers to assistant chef and paid her a salary of $1000 per month. On July 16, 1991, Kemp promoted Showers to head chef and paid her a salary of $1400 per month. On December 16,1992, Kemp took Showers off salary and again paid her an hourly wage. Showers voluntarily quit her employment on May 15, 1993.
¶7 On January 28, 1994, Showers filed a claim with the Montana Department of Labor and Industry which alleged that Kemp owed her unpaid wages. Showers’ claim alleged that Kemp failed to pay her wages from December 31,1989, through May 15, 1993.
¶8 Kemp was notified of Showers’ claim on January 31,1994. Since the Fair Labor Standard Act’s statute of limitations is two years from the date of employer notification, the Board concluded that Showers *321 may only claim unpaid wages from January 31, 1992, through May 15, 1993.
¶9 In July 1995, a Montana Department of Labor and Industry hearings examiner held a hearing on Showers’ claim for unpaid wages. The hearings examiner issued his Findings of Fact, Conclusions of Law, and Order on September 27,1995. The hearings officer determined that Kemp owed Showers $5,820.15 for unpaid wages. Kemp appealed to the Board. On January 26, 1996, the Board remanded the case to the hearings officer. On March 6,1996, the hearings officer issued amendments to his earlier findings and conclusions. Kemp again appealed the hearings officer’s decision to the Board. On May 31, 1996, the Board issued its Final Order which affirmed the hearings officer’s amended findings and conclusions.
¶10 On July 2,1996, Kemp petitioned the District Court for judicial review. The District Court affirmed the Board’s decision. Kemp appeals.
Standard of Review
¶11 This Court reviews an administrative agency’s conclusions of law to determine whether the conclusions are correct. Lewis v. B & B Pawnbrokers, Inc., 1998 MT 302, ¶ 18, 292 Mont. 82, ¶ 18, 968 P.2d 1145, ¶ 18 (quoting Langager v. Crazy Creek Products, Inc., 1998 MT 44, ¶ 13, 287 Mont. 445, ¶ 13, 954 P.2d 1169, ¶ 13). We review an administrative agency’s findings of fact to determine whether the findings are clearly erroneous. Lewis, ¶ 18.
Issue 1.
¶12 Did the District Court err in determining that Showers was not an exempt employee under the Fair Labor Standards Act?
¶13 Kemp maintains that Showers was employed in an executive capacity under 29 U.S.C. § 213(a)(1), and, therefore, that she was exempt from the Fair Labor Standards Act’s (FLSA) overtime wage requirements. The Board, however, contends that Showers spent most of her time preparing food. Consequently, the Board maintains that Showers was not an exempt employee.
¶14 The FLSA, codified at 29 U.S.C. §§ 201 through 219, establishes minimum wage, overtime, child labor, and equal pay requirements. 29 C.F.R. § 778.0 (1998). The United States Department of Labor (DOL) promulgates the operative definitions of the terms used in the FLSA. Public Employee’s Ass’n v. Dept. of Transp., 1998 MT 17, ¶ 10, 287 Mont. 229, ¶ 10, 954 P.2d 21, ¶ 10 (citing Spradling v. City of Tulsa, *322 Okl. (10th Cir. 1996), 95 F.3d 1492, 1495). The DOL’s regulations are entitled to deference and are the primary source of guidance for determining the scope and extent of the exemptions to the FLSA. Public Employee's Ass’n, ¶ 10 (citing Spradling, 95 F.3d at 1495).
¶ 15 The FLSA requires employers to pay employees at least one and one-half times the employees’ regular rate of pay for hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). Notwithstanding, employees who are employed in a “bona fide executive . . . capacity” are exempt from the FLSA’s minimum wage and overtime compensation requirements. 29 U.S.C. § 213(a)(1).
¶16 Exemptions from the FLSA’s requirements are to be narrowly construed against the employer asserting the exemption. Public Employee’s Ass’n, ¶ 11 (citing Donovan v. Brown Equipment & Service Tools, Inc. (5th Cir. 1982), 666 F.2d 148, 153). The employer has the burden of proving that the employee fits “plainly and unmistakably within the exemption’s terms.” Public Employee’s Ass’n, ¶ 11 (quoting Spradling, 95 F.3d at 1495).
¶17 Employees are employed in an executive capacity under 29 U.S.C. § 213(a)(1) if they are paid a salary of $250 or more per week, if they customarily and regularly direct the work of two or more other employees, and if their primary duty is managing the enterprise in which they are employed or managing a customarily recognized department or subdivision of the enterprise.[1] 29 C.F.R. § 541.1(f). See also 29 C.F.R. 541.119.
¶18 The parties agree that Kemp paid Showers a salary of $250 or more per week during the period at issue and that Showers directed the work of two or more other employees. They disagree, however, over whether Showers’ primary duty was management.
¶19 The DOL’s regulations provide five factors to weigh in determining whether an employee’s primary duty is management: (1) the time spent performing managerial duties; (2) the relative importance of the employee’s managerial duties as compared with the employee’s other duties; (3) the frequency with which the employee exercises discretionary powers; (4) the employee’s relative freedom from supervision; and (5) the relationship between the employee’s salary and the *323 wages paid to subordinates for the non-exempt work performed by the employee. 29 C.F.R. § 541.103. We will address these factors in turn.

Time Spent Performing Managerial Duties

¶20 The federal regulations state that the amount of time spent performing managerial duties “is a useful guide in determining whether managementis the primary duty of an employee.” 29 C.F.R. § 541.103. Primary duty generally means “the major part, or over 50 percent, of the employee’s time.” 29 C.F.R. § 541.103. “Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty.” 29 C.F.R. § 541.103.
¶21 In the instant case, Showers testified, and the hearings officer found, that she spent 20 percent of her time performing managerial work and 80 percent of her time cooking. Hence, under the general time rule, Showers’ primary duty was not managing the kitchen; rather, her primary duty was cooking. Thus, this factor supports the hearings officer’s determination that Showers was not an exempt employee.
¶22 The regulations, however, recognize that “[t]ime alone ... is not the sole test.” 29 C.F.R. § 541.103. Hence, employees who spend less than 50 percent of their time managing may have management as their primary duty if the other factors support that conclusion. 29 C.F.R. § 541.103. See also Dole v. Papa Gino’s of America, Inc. (D.Mass. 1989), 712 F.Supp. 1038, 1043 (citation omitted) (stating the “primary duty” means “principal” or “chief” duty and, thus, that the determination of whether an employee’s primary duty is management does not depend entirely on whether the employee spends more than 50 per cent of his or her time managing).

Relative Importance of the Employee’s Managerial Duties as Compared with the Employee’s other Duties

¶23 The next factor to consider is whether the employee’s managerial duties are more important than the employee’s other duties. 29 C.F.R. § 541.103. In Donovan v. Burger King Corp. (2nd Cir. 1982), 675 F.2d 516, 521, the Second Circuit Court of Appeals addressed the relative importance of the managerial duties of assistant managers working at Burger King restaurants. The assistant managers testified that the restaurants could not operate successfully unless they performed their managerial duties, which included determining the amount of food to be prepared, running cash checks, scheduling em *324 ployees, keeping track of inventory, and assigning employees to particular jobs. Donovan, 675 F.2d at 521. Hence, the court ruled that the assistant managers’ most important work was managing the restaurants. Donovan, 675 F.2d at 521 (citations omitted).
¶24 In the case at bar, Showers testified that she, like the assistant managers in Donovan, determined how much food to be prepared; scheduled employees; kept track of inventory; and directed the work of other employees. Moreover, Showers testified that she ordered food and minor kitchen supplies from suppliers; kept inventory records; trained new cooks; oversaw product quality; helped Kemp order major kitchen equipment; set the prices of daily specials; dealt with customers regarding special requests; dealt with regulatory officers, such as health inspectors; and met with customers planning weddings and other special events.
¶25 Showers’ testimony therefore shows that she took care of the duties that needed to be done so that her subordinates could work and so that the kitchen could operate successfully. Thus, we conclude that Showers’ managerial duties were more important than her other duties.

Frequency with which the Employee Exercises Discretionary Powers

¶26 The next factor to consider is the frequency with which the employee exercises discretionary powers. 29 C.F.R. § 541.103.
¶27 Here, Showers testified that she exercised independent judgment regarding the operation of the kitchen and that it was “her kitchen to operate.” Showers testified that she was in charge of the other cooks and dishwashers when she was working. Showers also testified that she determined, on a weekly basis, the quantity of food and supplies to order. She stated that she decided the quality of food to order and from which company to order food and supplies. Showers also stated that she sometimes suggested to Kemp who to hire and who to fire.
¶28 Showers’ testimony thus shows that she made decisions concerning the operation of the kitchen on a weekly, if not a daily, basis. We thus conclude that Showers’ testimony shows that she frequently exercised discretionary powers.

Employee’s Relative Freedom from Supervision

¶29 The next factor to consider is the employee’s relative freedom from supervision. 29 C.F.R. § 541.103. In Donovan, the court ruled that the assistant managers were relatively free from supervision be *325 cause they were solely in charge of their restaurant for most of their working time. Donovan, 675 F.2d at 522.
¶30 In the case at bar, Showers summed up her role at the restaurant by stating that she, like the assistant managers in Donovan, was “in charge” of the kitchen and that she “was responsible for the other cooks.” Showers also stated that she was responsible for food costs and the restaurant’s “bottom line.” Showers then stated that Kemp did not instruct her on how to operate the kitchen and that she spoke with him “as little as possible.” Showers also testified that she set her own work schedule.
¶31 Showers’ testimony thus shows that she ran the kitchen. The hearings examiner, however, ruled that Showers was not free from supervision because Kemp made decisions regarding hiring and firing and also because Showers was required to get Kemp’s permission to purchase major kitchen equipment. Notwithstanding, an employee will have management as his or her primary duty under the federal regulations if they are relatively, as distinguished from completely, free from supervision. 29 C.F.R. § 541.103. Moreover, we note that few managers are completely free from the supervision of either a more senior manager or the owner of the business in which they work. Thus, we hold that Showers’ testimony shows that, while she was not completely free from supervision, she was relatively free from supervision.

Relationship between the Employee’s Salary and the Wages Paid to Subordinates for the Non-exempt Work Performed by the Employee

¶32 The final factor to consider is the relationship between the employee’s salary and the wages paid to the employee’s subordinates for the non-managerial work performed by the employee. 29 C.F.R. § 541.103.
¶33 Showers testified that Kemp provided her with health insurance even though the line cooks were generally not offered health insurance. Thus, even though the hearings examiner found the record inconclusive as to the relationship between Showers’ salary and the wages paid to her subordinates, Showers’ testimony shows that Kemp compensated her better than her subordinates. See In re Marriage of Beadle, 1998 MT 225, ¶ 25, 291 Mont. 1, ¶ 25, 968 P.2d 698, ¶ 25 (including health insurance in the computation of a person’s income). Hence, we conclude that the relationship between Showers’ salary, including her health insurance, and the wages paid to her sub *326 ordinates supports the position that Showers’ primary duty was management.
¶34 In sum, although Showers spent 80 per cent of her time performing non-managerial work, the other factors in the federal regulations support the conclusion that Showers’ primary duty was management. Hence, even though exemptions from the FLSA’s requirements are to be narrowly construed against the employer asserting the exemption and that the employer has the burden of proving that the employee fits plainly and unmistakably within the exemption’s terms, we hold, as a matter of law, that Showers was an exempt employee under the FLSA.
¶35 Reversed.
CHIEF JUSTICE TURNAGE, GRAY and LEAPHART concur.

. Although not at issue in the instant case, the federal regulations contain additional factors to consider when determining whether an employee paid a salary of less than $250 per week is employed in an executive capacity under 29 U.S.C. § 213(a)(1). See 29 C.F.R. § 541.1.