No. 03-296

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 186

KEY WEST, INC.,

        Petitioner and Appellant,

    v.

FRANK M. WINKLER,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, Cause No. DV 2000-11,
The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Michael J. San Souci, Law Office of Michael J. San Souci, Bozeman, Montana

        For Respondent:

            John Frohnmayer, Attorney at Law, Bozeman, Montana

Submitted on Briefs:  October 23, 2003

Decided:  July 13, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Frank Winkler (Winkler) filed an overtime wage claim against his former employer, Key West, Inc. (KWI), in the amount of $7876. The Department of Labor and Industry found in favor of Winkler. KWI appealed to the District Court and the District Court affirmed. KWI now appeals to this Court. We affirm and remand.

¶2    We address the following issues on appeal:

¶3    1. Did the District Court err when it affirmed the Board of Personnel Appeals' decision?

¶4    2. Does the record contain sufficient evidence to support Winkler's award of overtime wages?

¶5    3. Was Winkler entitled to liquidated damages?

### BACKGROUND

¶6    Winkler was hired by KWI to work as sous chef at the restaurant "Jadra's" which it was preparing to open in the Bozeman area. Winkler was hired at a part-time salary of $1050 per month until the opening of the restaurant. Upon the opening of Jadra's, Winkler was to be paid a full-time salary of $2100 per month. KWI also told Winkler it would consider "some funds" to help with his moving expenses.

¶7    Winkler began working for KWI on February 15, 1998. On approximately March 1, 1998, KWI paid Winkler an additional $775, in part for moving expenses. KWI also gave him another $75 in bonus money and paid for some training for his dog. On approximately April 1, 1998, KWI increased Winkler's salary to $2250 per month. Although Winkler had limited authority to direct work and assist with menu planning, ordering supplies, cost and

2

quality control and conducting inventory, he spent at least 90% of his time prepping or cooking on the line.

¶8    In July of 1998, Winkler assumed full managerial responsibility of Jadra's kitchen, but managers retained final authority over all Winkler's decisions. In September of 1998, Winkler's job responsibilities were reduced and he was paid $9.00 per hour rather than a monthly salary. Winkler resigned from Jadra's in January of 1999.

¶9    In November of 1999, Winkler filed an overtime wage claim against KWI with the Wage and Hour Unit of the Montana Department of Labor and Industry (Wage and Hour Unit), alleging he was owed $7876 in overtime wages for work performed from March 1, 1998, to September 17, 1998. The compliance specialist at the Wage and Hour Unit awarded Winkler the entire amount, plus a statutory 15% penalty.

¶10    KWI appealed the Wage and Hour Unit's decision to the Hearings Bureau of the Department of Labor and Industry (Hearings Bureau). After a hearing, the hearing officer issued findings of fact, conclusions of law and an order in which he determined that Winkler was not entitled to overtime wages. The hearing officer also determined that neither party was entitled to attorney's fees and/or costs and dismissed Winkler's wage claim.

¶11    Winkler then appealed the Hearings Bureau's decision to the Board of Personnel Appeals (BOPA). BOPA reversed the Hearings Bureau stating the record contained insufficient evidence to support the Hearings Bureau's conclusion. BOPA remanded the case to the Hearings Bureau with instructions to redraft the ruling in favor of Winkler and calculate the overtime wages owed to him by KWI. The Hearings Bureau issued the order on remand as instructed. KWI appealed to BOPA and BOPA affirmed the Hearings Bureau

3

but denied Winkler's request for attorney's fees.

¶12    KWI appealed BOPA's decision to the District Court.  The District Court affirmed BOPA.  KWI now appeals to this Court.

STANDARD OF REVIEW

¶13    This Court reviews an administrative agency's conclusions of law to determine whether the conclusions are correct.  *Lewis v. B & B Pawnbrokers, Inc.,* 1998 MT 302, ¶ 18, 292 Mont. 82, ¶ 18, 968 P.2d 1145, ¶ 18.  We review an administrative agency's findings of fact to determine whether the findings are clearly erroneous.  *Lewis*, ¶ 18.

DISCUSSION

ISSUE ONE

¶14    Did the District Court err when it affirmed the Board of Personnel Appeals' decision?

¶15    The hearing officer found, and neither party contested, that the Fair Labor Standards Act (FLSA) applies to Winkler's claim for overtime pay.  Under the FLSA:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  The United States Department of Labor promulgates the operative definitions of the terms used in the FLSA and its regulations are entitled to deference and are the primary source of guidance for determining the scope and extent of exemptions.  *Kemp v. State Bd. of Personnel*, 1999 MT 255, ¶ 14, 296 Mont. 319, ¶ 14, 989 P.2d 317, ¶ 14.

¶16    The FLSA contains an exemption to this overtime requirement for any employee who is a bona fide executive.  29 U.S.C. § 213(a)(1).  Exemptions from the FLSA's requirements

4

are to be narrowly construed against the employer asserting the exemption. *Kemp*, ¶ 16. The employer has the burden of proving that the employee fits plainly and unmistakably within the exemption's terms. *Kemp*, ¶ 16.

¶17   Employees are employed in an executive capacity under 29 U.S.C. § 213 (a)(1) if they are paid a salary of $250 or more per week, if they customarily and regularly direct the work of two or more other employees, and if their primary duty is managing the enterprise in which they are employed or managing a customarily recognized department or subdivision of the enterprise. 29 C.F.R. § 541.1(f); *see also* 29 C.F.R. § 541.119.

¶18   At issue here is whether Winkler customarily and regularly directed the work of two or more other employees. BOPA concluded that the record of the hearing before the Hearings Bureau failed to show that he did. BOPA stated that "[a]bsent such evidence, Mr. Winkler could not have been employed in a 'bona fide executive capacity.'" BOPA stated further that Winkler "was not exempt from the minimum wage and overtime compensation requirements of the Fair Labor Standards Act." BOPA remanded the case to the hearing officer to be redrafted to reflect BOPA's conclusion. The hearing officer did so, and his Order of Remand finding in favor of Winkler was affirmed by BOPA and the District Court.

¶19   KWI argues that BOPA and the District Court committed reversible error by substituting their own judgment for that of the finder of fact–in this case the hearing officer. Actions brought before BOPA are subject to the requirements of the Montana Administrative Procedure Act (MAPA), Title 2, Chapter 4, Montana Code Annotated. The standard of review for MAPA is set forth at § 2-4-704(2), MCA. The statute provides:

> The court may not substitute its judgment for that of the agency as to the

weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:

. . . .

(a) the administrative findings, inferences, conclusions, or decisions are:

. . . .

(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion[.]

Section 2-4-704(2)(a)(vi), MCA.

¶20 We have held that it is an abuse of discretion pursuant to § 2-4-704(2)(a)(vi), MCA, for an agency to modify the findings of a hearing examiner in violation of § 2-4-621(3), MCA. *Brander v. Director, Dept. of Inst.* (1991), 247 Mont. 302, 307-08, 806 P.2d 530, 533. Section 2-4-621(3), MCA, provides, in relevant part:

The agency may adopt the proposal for decision as the agency's final order. The agency in its final order may reject or modify the conclusions of law and interpretation of the administrative rules in the proposal for decision but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.

¶21 Here, BOPA complied with the requirements of § 2-4-621(3), MCA. In its Order of Remand, BOPA stated:

IT IS HEREBY CONCLUDED that the record of hearing, including all exhibits and the transcript of testimony, fails to evidence that Mr. Winkler customarily and regularly directed the work of two or more other employees. Absent such evidence, Mr. Winkler could not have been employed in a "bonafide executive capacity." The employer, therefore, failed to meet its burden of proof to establish that Mr. Winkler was a non-exempt employee. Consequently, Mr. Winkler was not exempt from the minimum wage and overtime compensation requirements of the Fair Labor Standards Act.

BOPA did not reject or modify the findings of fact, calling for an explanation as required by

§ 2-4-621(3), MCA; it rejected and ordered a modification of the conclusions of law. Thus, in its review of the Hearings Bureau's decision, BOPA adhered to the requirements of MAPA.

¶22 KWI relies on *Moran v. Shotgun Willies, Inc.* (1995), 270 Mont. 47, 889 P.2d 1185, in support of its contention that the District Court also applied the wrong standard of review of BOPA's decision. In *Shotgun Willies*, the District Court described its standard of review of an administrative agency order as follows:

> As to any finding of fact made by the hearing examiner which is rejected or modified by [the Commission] the Court should itself review such finding of the hearing examiner to determine whether it was "based upon competent substantial evidence" under § 2-4-621(3), MCA. If the Court makes a determination that such finding was so supported it should then determine that the rejection or modification by [the Commission] of such finding was "characterized by abuse of discretion or clearly unwarranted exercise of discretion" under § 2-4-704(2)(a)(vi), MCA.

*Shotgun Willies*, 270 Mont. at 51-52, 47 P.2d at 1187-88. We held that the District Court's standard of review in *Shotgun Willies* was proper. *Shotgun Willies*, 270 Mont. at 52, 47 P.2d at 1188.

¶23 *Shotgun Willies* does not support KWI's argument. In this case, BOPA and the District Court complied with the legal requirements identified in *Shotgun Willies*. The District Court stated in its decision, "This Court carefully reviewed the briefs and the transcript. The decision of the Board which remanded the findings of fact to the hearing officer was supported by the evidence." In sum, neither BOPA nor the District Court applied the incorrect standard of review.

7

¶24 Does the record contain sufficient evidence to support Winkler's award of overtime wages?

¶25 The Hearings Bureau concluded that Winkler was entitled to $7876 in overtime wages. BOPA and the District Court affirmed this conclusion. As we stated above, the FLSA requires that employees working overtime be compensated at not less than one and one-half the regular rate of compensation. 29 U.S.C. § 207(a)(1). The rule does not change even if the claimant is compensated at a rate above the statutory minimum. *Adair v. City of Kirkland* (9th Cir. 1999), 185 F.3d 1055, 1059.

¶26 KWI argues that Winkler's overtime pay should be calculated by dividing the number of hours he agreed to work into the specified salary to determine his regular rate, and then multiplying that rate by one and one-half times any hours worked in excess of 40 hours. KWI claims that Winkler agreed to work as much as 60 hours per week. Applying a 60 hour workweek to KWI's proposed formula, Winkler is not due any overtime compensation.

¶27 The Hearings Bureau, however, found that Winkler did not agree to work any fixed number of hours for any workweek, citing to evidence in the record. KWI points to other evidence in the record to support its contention that Winkler agreed to work up to 60 hours per week. KWI may not like the agency's conclusion, but as we stated above, pursuant to § 2-4-704(2), MCA, the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The Hearings Bureau adequately supported its determination that Winkler did not agree to work for a set number of hours per week with references to the record.

## ISSUE THREE

¶28    Was Winkler entitled to liquidated damages?

¶29    The FLSA provides for employees who are not paid overtime to recover liquidated damages in the amount of the unpaid wages in addition to the unpaid wages.  29 U.S.C. § 216(b).  The Hearings Bureau concluded that Winkler was entitled to $7876 in liquidated damages.  BOPA and the District Court affirmed.

¶30    KWI claims the liquidated damages were awarded in error.  KWI argues that it acted in good faith in paying Winkler's wages and therefore liquidated damages are not warranted.  Pursuant to 29 U.S.C. § 260, under the FLSA:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act, as amended, the court may, in its sound discretion, award no liquidated damages . . . .

¶31    In *Tefft v. State* (1995), 271 Mont. 82, 92, 894 P.2d 317, 324, we adopted the test articulated in *Walton v. United Consumers Club Inc.* (7th Cir. 1986), 786 F.2d 303, 312, to determine what constitutes good faith and reasonable grounds.  The standard enumerated in *Tefft* is "whether the employer's conduct–objectively viewed through the lens of the 'reasonable man' famous in tort law–acted 'in good faith and . . . had reasonable grounds for believing that his act or omission was not a violation' of the FLSA."  *Tefft*, 271 Mont. at 93, 894 P.2d at 324.

¶32    The Hearings Bureau found that "[b]ased on the overall record, Key West failed to present sufficient evidence of good faith and reasonable grounds to believe it did not violate the FLSA."  Again, we state that pursuant to § 2-4-704(2), MCA, the court may not

9

substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. As such, we affirm Winkler's award of liquidated damages.

¶33    Furthermore, we hold that Winkler is entitled to fees and costs on appeal pursuant to § 39-3-214, MCA, and 29 U.S.C. § 216(b).

¶34    Affirmed and remanded for determination of attorney's fees and costs.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE

10