No. 05-166

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 3

_____

FRANCINE DUPUIS,

          Petitioner and Appellant,

    v.

BOARD OF TRUSTEES, RONAN SCHOOL
DISTRICT NO. 30,

          Respondent and Respondent.

_____

APPEAL FROM:    District Court of the Twentieth Judicial District,
                   In and for the County of Lake, Cause No. DV 2004-200
                   The Honorable Deborah Kim Christopher, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

             James Park Taylor, Confederated Salish and Kootenai Tribes, Pablo,
             Montana

        For Respondent:

             Elizabeth A. Kaleva, Attorney at Law, Missoula, Montana

_____

                   Submitted on Briefs:  November 30, 2005

                                Decided:  January 4, 2006

Filed:

          _____
                       Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Francine Dupuis (Dupuis) appeals from an order of the Twentieth Judicial District, Lake County, denying her petition for judicial review. We affirm.

¶2 The sole issue on appeal is whether the Lake County Superintendent of Schools lacked jurisdiction to hear an appeal from a discretionary decision of the Ronan School District Board of Trustees.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The Board of Trustees (Board) for the Ronan School District. No. 30 (District) held a public hearing on May 5, 2003, on the continued use of the "Chief" and "Maiden" mascots and the use of certain Native American symbols on the floor of the Ronan Middle School gymnasium. The District is located entirely within the boundaries of the Flathead Reservation, the current home of the Confederated Salish and Kootenai Tribes. The Board voted five to one in favor of retaining the mascots for the District despite the objections of the Confederated Salish and Kootenai Tribes, the Ronan Indian Education Committee (IEC), and numerous Tribal members.

¶4 Dupuis filed an appeal to the Lake County Superintendent of Schools (County Superintendent) alleging that the use of the mascots creates a hostile environment within the District, that the Board impermissibly disregarded input from the IEC, and that the Board failed to act on Dupuis's request for reconsideration. The District filed a motion to dismiss, arguing that claims of a racially hostile environment belong in front of the Montana Human Rights Commission, not the County Superintendent. The District further noted that the District policies at issue did not empower Dupuis to force a

2

particular outcome by the Board on the mascot issue and that the District policies did not provide for any mechanism to force reconsideration. The County Superintendent entered an order requiring the parties to submit additional information regarding jurisdiction.

¶5 Dupuis filed a brief on jurisdiction and an Amended Notice of Appeal. Dupuis asserted that the Board's decision violated Article X, Section 1(2) and Article II, Section 4 of the Montana Constitution, § 20-1-501, MCA, and District Policies 2450 and 4150. The County Superintendent issued an order finding jurisdiction limited to a factual hearing on whether the District violated the Montana Constitution, state law, and District policies in placing names and logos on the gymnasium floor that offend the dignity of the IEC, its members, and the Confederated Salish and Kootenai Tribes. The County Superintendent issued this order based on the Amended Notice of Appeal without any input from the District.

¶6 The County Superintendent permitted the District to respond to the new arguments raised in the Amended Notice of Appeal before entering a final jurisdiction notice. The District argued in a second motion to dismiss that Article II, Section 4 of the Montana Constitution, the individual dignity clause, did not provide an independent basis for Dupuis's claims, and that it could not be used in conjunction with Article X, Section 1(2). Further, the District argued that neither Article X, Section 1(2) nor § 20-1-501, MCA, mandate a particular decision by the District regarding cultural heritage. The County Superintendent issued another limited order accepting jurisdiction and the District appealed to the State Superintendent of Public Instruction (State Superintendent).

¶7 The State Superintendent reversed the County Superintendent's jurisdiction order

after hearing oral argument and held that the claims raised by Dupuis did not give rise to a "contested case" under Montana law. Dupuis filed a petition for judicial review in the Twentieth Judicial District, Lake County. The District Court dismissed the petition for lack of jurisdiction without comment on January 14, 2005. This appeal followed.

## STANDARD OF REVIEW

¶8 We review an administrative agency's conclusions of law to determine whether the conclusions are correct. *Key West, Inc. v. Winkler*, 2004 MT 186, ¶ 13, 322 Mont. 184, ¶ 13, 95 P.3d 666, ¶ 13.

## DISCUSSION

¶9 Dupuis argues that the Board violated Ronan School District Policies 2450 and 4150 by impermissibly disregarding input from the IEC and the Confederated Salish and Kootenai Tribes. Dupuis further argues that Article X, Section 1(2) and Article II, Section 4 of the Montana Constitution and § 20-1-501, MCA, bestow privately enforceable rights. She asserts that the Board's decision to continue the use of "Chiefs" and "Maidens" and to place these names and Native American imagery on the Ronan Middle School gymnasium floor violated these rights. Dupuis alleges that the Board's violation of these rights creates a "contested case" within the meaning of Rule 10.6.102(1), ARM. The District counters that the constitutional and statutory provisions do not create privately enforceable rights, and thus Dupuis's claims do not create a "contested case" over which the County Superintendent may exercise jurisdiction.

¶10 A county superintendent's jurisdiction over any appeal from a decision of a board of trustees is limited to those instances involving a "contested case." The administrative

4

rules define a "contested case" as "any proceeding in which a determination of legal rights, duties or privileges of a party is required by law to be made after an opportunity for hearing."  Rule 10.6.102(1), ARM.  A county superintendent does not have jurisdiction over a matter absent a constitutional or statutory right to a hearing.  *Roos v. Kircher Public School Bd.*, 2004 MT 48, ¶ 10, 320 Mont. 128, ¶ 10, 86 P.3d 39, ¶ 10.

### 1. District Policies

¶11   Dupuis argues that the Board's decision to continue using the "Chiefs" and "Maidens" mascots, despite the objections of the IEC, the Confederated Salish and Kootenai Tribes, and numerous Tribal members, violates District Polices 2450 and 4150. District Policy 2450 purports to recognize the distinct and unique cultural heritage of Native Americans and to commit the District to working in cooperation with Montana Tribes in implementing educational goals or adopting rules relating to the education of students in the District.  District Policy 4150 requires that Indian children be allowed to participate on an equal basis in programs supported by certain federal funding, and that parents of Indian children be afforded an opportunity to present their views on such programs and activities.

¶12    "To be appealable to the County Superintendent the policy decision at issue must be governed by a statute that grants an administrative hearing or an interest constitutionally protected by due process must be at stake. . . . When the Legislature intends to provide contested case proceedings it enacts a statute stating that there is a right to a hearing."  *Roos*, ¶ 10, quoting *Bland v. Libby School District* (1993), OSPI 205-92, 12 Ed. Law 76.   A mere disagreement with a school district does not automatically

entitle an aggrieved party to a contested case hearing to resolve the disagreement. *Roos*, ¶ 10.

¶13 Even assuming that the District policies apply to the Board's decision on mascots, the policies by themselves do not confer jurisdiction on the County Superintendent to hear Dupuis's claims. The District policies require the Board to work cooperatively with Tribes and to consider input from Tribes and Indian parents. The Board held a public meeting and considered the opinions of the IEC, Tribal authorities, and many Indian parents. Although the Board ultimately did not heed these recommendations, disagreement with a Board's discretionary decision does not automatically give rise to a statutory or constitutional right to a hearing and therefore does not rise to the level of a "contested case" within the meaning of Rule 10.6.102(1), ARM. *Roos*, ¶ 10. Similarly, absent a "contested case," the District policies do not grant the right to an appeal from an unfavorable decision.

### 2. Section 20-1-501, MCA

¶14 Section 20-1-501, MCA, provides, in part, that "[i]t is the constitutionally declared policy of this state to recognize the distinct and unique cultural heritage of American Indians and to be committed in its educational goals to the preservation of their cultural heritage." Dupuis asserts that § 20-1-501, MCA, creates a privately enforceable right, and that the Board's decision to continue using mascots that are degrading and offensive to the dignity of Native students and the Confederated Salish and Kootenai Tribes violates this right.

¶15 Nothing in this statute provides, however, for a right to a hearing before the

County Superintendent if an aggrieved party believes that a school district has violated this provision of Montana law. A county superintendent does not have jurisdiction to hear a matter absent a constitutional or statutory right to a hearing. *Roos*, ¶ 10. We therefore agree with the State Superintendent and the District Court that nothing in § 20-1-501, MCA, confers jurisdiction on the County Superintendent.

### 3. Montana Constitution

¶16 Dupuis alleges that the Board's decision to continue using "Chiefs" and "Maidens" violates Article X, Section 1(2) and Article II, Section 4 of the Montana Constitution. Article X, Section 1(2) "recognizes the distinct and unique cultural heritage of the American Indians and is committed in its educational goals to the preservation of their cultural integrity." Article II, Section 4, the individual dignity clause, provides, in part, that "[t]he dignity of the human being is inviolable." Dupuis asserts that these constitutional provisions create privately enforceable rights and that the District's use of offensive and degrading mascots violates these rights. She further asserts that these provisions prohibit a school district from choosing a school mascot, team name, or team symbol that the District knows to violate the dignity and cultural traditions of the Tribal people on the reservation. The District argues that the Montana Human Rights Commission provides the proper forum for Dupuis to vindicate her claims. We agree.

¶17 The Montana Human Rights Act (MHRA) provides, in part, that it "is an unlawful discriminatory practice for an educational institution: (1) to exclude, expel, limit, or otherwise discriminate against an individual . . . enrolled as a student in the terms, conditions, or privileges of the institution because of race, creed, religion, sex, marital

7

status, color, age, physical disability, or national origin or because of mental disability . . . ." Section 49-2-307, MCA. The MHRA establishes the exclusive remedy for conduct violating this provision. Section 49-2-509(7). An aggrieved party therefore first must file a discrimination claim with the Montana Human Rights Commission before bringing an action in District Court. *Romero v. J & J Tire*, 238 Mont. 146, 150, 777 P.2d 292, 295.

¶18 Dupuis's allegations of discrimination and violations of the individual dignity clause first must be brought before the Montana Human Rights Commission. Section 49-2-509(7), MCA. Dupuis's failure to exhaust this administrative remedy precludes our review of her discrimination claims. *Art v. Montana Dept. of Labor and Industry*, 2002 MT 327, ¶ 14, 313 Mont. 197, ¶ 14, 60 P.3d 958, ¶ 14. We therefore affirm the District Court's determination that the County Superintendent lacked jurisdiction to address the merits of Dupuis's discrimination claim. We emphasize that our resolution of this case on procedural grounds should not be interpreted as reflecting our view as to whether the District's use of "Chiefs" and "Maidens" is degrading and offensive to Native Americans.

¶19 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER