JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 Stan Jones and Bob Kelleher (Petitioners) appeal from the order of the Second Judicial District Court, Silver Bow County, dismissing their Second Amended Complaint pursuant to Rule 12(b)(6), M.R.Civ.P. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 The present appeal stems from a series of three gubernatorial debates held on public university campuses throughout Montana in September and October 2004. The debate sponsors varied with the debate’s location. The Montana Standard, the Butte-Silver Bow Chamber of Commerce, Butte Local Development Corporation, several local radio stations, and Montana Tech sponsored the debate on Montana Tech’s Butte campus. The Associated Students of Montana State University (MSU), the Communications and Public Affairs office of MSU, the MSU Leadership Institute, the Wheeler Center, and the Bozeman Chronicle sponsored the debate in Bozeman. Finally, the University of Montana (UM) Alumni Association, the Montana Economic Development Association, and, to a small degree, the UM Political Science Honor Society, sponsored Missoula’s debate. The record does not allocate each entity’s sponsorship percentage for any of the debates.
¶3 The debates’ sponsors did not invite Stan Jones or Bob Kelleher, the Libertarian Party and Green Party candidates for governor in 2004, respectively, to participate in the debates. Petitioners initiated a series of judicial actions before the first debate scheduled for *4 September 21, 2004, seeking injunctive relief to compel their participation in the debates. Petitioners also sought monetary damages to compensate for alleged violations of their civil and constitutional rights.
¶4 Petitioners Initiated their attempts to participate in the debates by filing in this Court on September 7, 2004, what they titled a “Rule 17 Motion For Order to Show Cause Why Writ of Mandamus Should Not Be Issued Directing Respondents To Obey Open Meeting Law By Allowing Registered Voters To Quiz, Observe And Evaluate All Four Gubernatorial Candidates While Debating on Sept. 21, 2004 At Montana Tech And Thereafter.” We entered an order the following day dismissing Petitioners’ motion for failure to provide even an arguable basis for this Court to exercise original jurisdiction.
¶5 Petitioners then filed a document in District Court the following week seeking a temporary restraining order (TRO), hearing, and a jury trial on damages. The original complaint named 18 defendants. On that same day, the Petitioners filed with the District Court a “Mini-Brief on Public Fora.” The District Court, then Judge Kurt Krueger presiding, held an ex parte hearing on September 16, 2004. The court noted that Petitioners’ complaint did not allege irreparable injury or demonstrate likelihood of succeeding on the merits in support of Petitioners’ request for immediate injunctive relief. Petitioners also had failed to formally serve any of the 18 defendants named in the complaint. The District Court thus denied Petitioners’ requests and ordered Petitioners to serve the defendants properly and allow them sufficient time to respond before it would schedule further hearings in the matter. Judge Krueger recused himself from the matter on September 20,2004, and Judge John W. Whelan assumed jurisdiction.
¶6 Petitioners amended their request for a TRO and served some parties in accordance with the Montana Rules of Civil Procedure. We note that although Petitioners continued to caption their requests to participate in the debates as requests for a TRO, the District Court, by virtue of requiring Petitioners to provide proper notice to the defendants, subsequently treated the matter as a request for a preliminary injunction. Compare § 27-19-315, MCA (allowing a court to grant a restraining order without notice to the adverse party provided specified criteria are met) to § 27-19-301(1), MCA (stating that a court may not enter a preliminary injunction without reasonable notice to the adverse party).
¶7 Petitioners filed a First Amended Complaint along with a motion for an order to show cause and for preliminary injunctive relief on *5 September 21, 2004. The District Court, Judge Neis Swandal having assumed jurisdiction over the matter following the recusals of Judge Whelan and Judge Krueger, issued an order to show cause on September 22, 2004. The order directed the defendants to appear on September 28, 2004, for a hearing on Petitioners’ motion. Petitioners filed a Second Amended Complaint on September 23, 2004.
¶8 Petitioners’ Second Amended Complaint contains a preliminary statement in which they maintain that they initially sought an order to show cause before this Court why the Defendants “should not be ordered to obey Montana’s open meeting laws” by allowing the Petitioners to participate in the debates. The preliminary statement explains that we denied Petitioners’ request on the grounds that we could not rule in a “factual vacuum.” Petitioners further allege in this preliminary statement that they “bring this action,” presumably the Second Amended Complaint, “to obtain enforcement of federal and state anti-discrimination laws and decisions.” In particular, the preliminary statement cites to a provision of the Government Code of Fair Practices, § 49-3-205(1), MCA, that prohibits the performance of any governmental service with discrimination based upon “political ideas.”
¶9 The Second Amended Complaint contains three actual causes of action following this prehminary statement. The first cause alleges that Defendants “have agreed and conspired with the knowledge and consent of each other under color of official right and color of state law within the meaning of 42 USC § 1983 and 1985 and the Voting Rights Act of 1965 to prevent Jones and Kelleher from participating in the debates scheduled for Tuesday, September 21 in the Library of TECH, the theatre of U of M on October 8 and at MSU, Bozeman on October 4.” The first cause of action further alleges that “[s]aid conspiracy consists of denying candidates JONES and KELLEHER the right to tell voters gathered in a designated, tax-supported public forum on how to solve” numerous problems facing Montana. After cataloguing these problems, the complaint continues that ‘VOTERS have a constitutional and statutory right to listen to and observe all four candidates for governor while in the presence of each other and being cross-examined by each other just as a jury has a right to observe witnesses on the witness stand after being sworn to tell the truth.”
¶10 Petitioners purport to bring the second cause of action on behalf of “91,989 unregistered Montana minors [MINORS] including 77,943 school children... and 14,046 pre-schoolers [25.6% of54,869], a Class.” The second cause of action alleges that these 91,989 unregistered *6 minors must rely upon their parents becoming educated “about the four-not two-candidates” for governor. The third cause of action, titled “Kelleher’s Cause of Action,” challenges the accuracy of an editorial published in the Montana Standard that claimed that Petitioner Kelleher had “never topped 5 percent” in all of the elections in which he has been a candidate.
¶11 The District Court held a hearing on September 28, 2004, that addressed Petitioners’ request for a preliminary injunction and received one exhibit. Petitioner Kelleher testified at the hearing. The defendants presented as witnesses Bill Johnston, the alumni director for UM, and Jodie DeLay, a program coordinator in the Office of Communications and Public Affairs at MSU. The District Court denied Petitioners’ request for injunctive relief based on their failure to demonstrate either irreparable harm or a likelihood of succeeding on the merits. The District Court issued this order on October 4, 2004. Petitioners did not appeal.
¶12 All remaining defendants then filed motions to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P. The District Court dismissed Petitioners’ Second Amended Complaint, and ordered the file closed on December 21, 2004. Petitioners filed a motion for reconsideration and various defendants responded. The District Court denied the motion on January 12, 2005. Petitioners’ notice of appeal filed on January 31, 2005, stated that they appealed from the District Court’s order denying their Motion for Reconsideration.
¶13 The Montana Rules of Civil Procedure do not recognize, however, a Motion for Reconsideration. See Nelson v. Driscoll, 285 Mont. 355, 359, 948 P.2d 256, 258 (1997). The District Court’s order denying Petitioners’ Motion for Reconsideration acknowledged Petitioners’ procedural misstep. The court’s order also recognized that even if the court considered Petitioners’ motion as one to alter or amend the judgment (as permitted under Rule 59(g), M.R.Civ.P.), Petitioners had failed to bring any new information or cite any new law for the court to consider.
¶14 Although Petitioners appealed from an order in response to a motion not authorized under the Montana Rules of Civil Procedure, Petitioners filed the notice of appeal within the 60-day time limit from the notice of entry of judgment of the court’s first order dismissing the Second Amended Complaint. Rule 5(a)(1), M.R.App.P. Thus, we will accommodate Petitioners’ appeal in this instance as though they had appealed from the District Court’s dismissal of their Second Amended Complaint.
*7 STANDARD OF REVIEW
¶15 We construe the complaint in the light most favorable to the plaintiffs when reviewing an order dismissing a complaint under Rule 12(b)(6), M.R.Civ.P. Plouffe v. State, 2003 MT 62, ¶ 8, 314 Mont. 413, ¶ 8, 66 P.3d 316, ¶ 8. A court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Plouffe, ¶ 8. The district comet's determination that a complaint failed to state a claim is a conclusion of law. Plouffe, ¶ 8. We review the district court's conclusions of law to determine whether they are correct. Plouffe, ¶ 8.
¶16 The Dissent surmises that the District Court may have considered testimony from the September 28, 2004, hearing on the Petitioners’ motion for preliminary injunctive relief in ultimately dismissing the Petitioners’ Second Amended Complaint. The Dissent suggests that this potential consideration by the District Court transformed the Montana University System’s motion to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P., to a motion for summary judgment pursuant to Rule 56, M.R.Civ.P. ¶ 104. The Dissent fails to cite to any statement or reference in the District Court’s order of October 4, 2004, however, that would support its conjecture.
¶17 Moreover, when a district court converts a motion to dismiss to a motion for summary judgment, as contemplated by Rule 12(b), M.R.Civ.P., the court must provide notice to the parties of its intention to do so. Hoveland v. Petaja, 252 Mont. 268, 271, 828 P.2d 392, 393 (1992); State ex rel. Dept. of H.& E.S. v. City of Livingston, 169 Mont. 431, 436, 548 P.2d 155, 157 (1976). “The purpose of notice is to allow the parties a reasonable opportunity to present all material made pertinent to the motion and avoid surprise.” Hoveland, 252 Mont. at 271, 828 P.2d at 393-94. Nothing in the record indicates that the District Court provided notice to the parties of its intent to convert the Montana University System’s motion to dismiss into a motion for summary judgment. We will not assume that the District Court converted the motion to dismiss into a motion for summary judgment absent such notice and absent any claim by the Petitioners of such a conversion. Accordingly, we will review the District Court's conclusions of law to determine whether they are correct. Plouffe, ¶ 8.
DISCUSSION
¶18 Did the District Court properly dismiss Petitioners’ Second Amended Complaint?
*8 ¶19 In light of the unclear briefing and complicated procedural posture of this case, we deem it necessary to establish the context of this appeal before we address its merits.
¶20 The Respondent on anneal.
¶21 Petitioners’ Second Amended Complaint names 22 defendants. Petitioners failed to serve briefs on 21 defendants as required by Rules 20(b) and 26(b), M.R.App.P. We address only those claims asserted against Montana University System as the sole Respondent whom Petitioners served on appeal.
¶22 The issues on appeal.
¶23 Petitioners’ brief on appeal includes numerous issues not raised in the District Court. We will not review issues raised for the first time on appeal. Bekkedahl v. McKittrick, 2002 MT 250, ¶¶ 31-32, 312 Mont. 156, ¶¶ 31-32, 58 P.3d 175, ¶¶ 31-32. We limit our review to those issues Petitioners raised in the District Court. Bekkedahl, ¶ 32.
¶24 The District Court’s order analyzed briefly whether the gubernatorial debates were public forums. This issue only arose, however, in the context of Petitioners’ request for injunctive relief. The District Court issued an order denying that request on October 5,2004. Rule 1(b)(2), M.R.App.P., provides that a party may appeal an order “refusing to grant or dissolve an injunction.” Rule 2(a), M.R.App.P., provides that this Court may review the decision and any intermediate order or decision objected to properly that involves the merits or necessarily affects the judgment “except a decision or order from which an appeal might have been taken.” (Emphasis added). Petitioners’ failure to appeal the District Court’s order denying injunctive relief-an appealable order listed under Rule 1(b)(2), M.R.App.P.-consequently deprives this Court of the authority to address it now. Rule 2(a), M.R.App.P.; See also Little Horn State Bank of Wyola v. Gross, 89 Mont. 472, 476, 300 P. 277, 278-79 (1931); DeLaurentis v. Vainio, 169 Mont. 520, 524, 549 P.2d 461, 464 (1976).
¶25 Petitioners’ Second Amended Complaint.
¶26 Petitioners’ Second Amended Complaint includes headings for three causes of action. Petitioners did not pursue on appeal a review of the District Court’s dismissal of their third claim, known as the “Kelleher Claim,” in which Petitioners took issue with the accuracy of a newspaper editorial that claimed that Kelleher never had received more than five percent of the vote in any election in which he had run as a candidate. We review the remaining two claims in turn.
¶27 The “first cause of action” in Petitioners’ Second Amended Complaint alleges that the defendants “have agreed and conspired *9 with the knowledge and consent of each other under color of official right and color of state law within the meaning of 42 USC § 1983 and 1985 and the Voting Rights Act of 1965 to prevent Jones and Kelleher from participating in the debates....” Petitioners further allege that the “conspiracy consists of denying candidates JONES and KELLEHER the right to tell voters gathered” in a public debate how to solve Montana’s problems. The “first cause of action” arguably also incorporates the Government Code of Fair Practices, § 49-3-205(1), MCA, referenced in the preliminary statement, that prohibits the performance of any governmental service with discrimination based upon “political ideas.” We address these assertions in turn, and, in harmony with our policy to interpret the pleadings liberally, Ryan v. City of Bozeman, 279 Mont. 507, 513, 928 P.2d 228, 232 (1996). We also address a common law conspiracy claim as the District Court discussed.
¶28 A. Did Petitioners state a claim under 42 U.S.C. § 1983 against Montana University System?
¶29 Petitioners’ Second Amended Complaint provides scant analysis and facts regarding their § 1983 claim. In fact, the Second Amended Complaint only mentions § 1983 in the single sentence quoted at ¶ 27 above with respect to the alleged conspiracy. Arguably the sole reference to § 1983 could be interpreted as being limited to the “under color of official right and color of state law” clause in an effort to establish an element of conspiracy claim under 42 U.S.C. § 1985. In line with our policy to interpret pleadings liberally, however, we will analyze whether Petitioners have alleged a separate stand-alone claim under § 1983. Ryan, 279 Mont. at 513, 928 P.2d at 232.
¶30 The Second Amended Complaint’s introduction declares that Petitioners brought the action “to obtain enforcement of federal and state antidiscrimination laws and decisions.” The preliminary statement fails to identify those federal laws and decisions that might be relevant to Petitioners’ claim. The remainder of the Second Amended Complaint also fails to identify the federal antidiscrimination laws and decisions that may be relevant. The preliminary statement in the Second Amended Complaint also cites § 49-3-205(1), MCA, and alleges that the defendants discriminated against Petitioners based on their political ideas. Thus, it appears that the spirit of Petitioners’ § 1983 claim rests on allegations of political discrimination.
¶31 Discrimination under federal law.
¶32 Section 1983 provides that every person acting under color of state *10 law who deprives a citizen “of any rights, privileges, or immunities secured by the Constitution and laws” shall be liable to the injured party. Section 1983 “is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred ” Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994); Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870 (1989). The first step in evaluating a § 1983 claim is to identify, therefore, the specific federal constitutional or statutory right allegedly infringed. Graham, 490 U.S. at 394, 109 S. Ct. at 1870.
¶33 A careful scouring of Petitioners’ Second Amended Complaint reveals alleged violations of nary a substantive right guaranteed by the U.S. Constitution or a federal statute. In fact, Petitioners identify the following provisions of the Montana Constitution or Montana law as being relevant to their claims: Article II, Sections 1, 2, 3, 4, 6, 7, 8, and 9, of the Montana Constitution, and § 13-35-213, MCA. The complaint elsewhere mentions our decision in Common Cause v. Statutory Committee, 263 Mont. 324, 868 P.2d 604 (1994), § 2-3-101, MCA, and § 2-3-201, MCA, although Petitioners leave their relevancy to the reader to ascertain.
¶34 Federal law recognizes claims of political discrimination in the context of deprivation of a property interest. This property interest generally takes the form of government employment. See e.g. Elrod v. Burns, 427 U.S. 347, 372-73, 96 S. Ct. 2673, 2689 (1976) (holding that it is unconstitutional for public agencies to discharge employees who are neither policymaking nor advisory based on their political affiliations, reasoning that an employee's exercise of First Amendment rights outweighs the government's interest in maintaining a system of political patronage); Branti v. Finkel, 445 U.S. 507, 514-15, 100 S. Ct. 1287, 1292-93 (1980) (same). The Supreme Court expanded upon Elrod and Branti in Rutan v. Republican Party of Illinois, 497 U.S. 62, 75, 110 S. Ct. 2729, 2737 (1990), where it held that the government may not base promotions, transfers, recalls, and other hiring decisions involving public employees on party affiliation and support unless the government can show that party affiliation is an appropriate requirement for the position involved.
¶35 Petitioners do not allege any employment related claims of political discrimination. We can find no cases, and the Petitioners have failed to identify any cases, however, that support the proposition that a party can vindicate a claim of political discrimination outside the employment context through an action brought pursuant to § 1983.
¶36 The Petitioners, as appellants, bear the burden of establishing *11 error by the court; such error cannot be established in the absence of legal authority. State v. Bailey, 2004 MT 87, ¶ 26, 320 Mont. 501, ¶ 26, 87 P.3d 1032, ¶ 26. The Petitioners’ failure to establish error leads us to conclude that the District Court correctly dismissed any claim by Petitioners’ of discrimination under federal law. The District Court, of course, reached its conclusion based on its analysis of the public forum doctrine. It is well settled that if we reach the same conclusion as the district court, but on different grounds, we nonetheless may affirm the district court’s judgment. Safeco Ins. Co. of America v. Liss, 2000 MT 380, ¶ 25, 303 Mont. 519, ¶ 25, 16 P.3d 399, ¶ 25.
Discrimination under state law.
¶37 Absent any basis in federal law to support its claim of political discrimination under § 1983, we turn then to Petitioners’ claims of political discrimination based on Montana law. Petitioners cite § 49-3-205(1), MCA, at several points in their Second Amended Complaint. This statute prohibits discrimination based upon “political ideas” in the performance of any governmental services. Petitioners seem to allege that the Montana University System provides governmental services in the form of hosting political debates within public buildings. Petitioners appear to allege that the Montana University System has violated § 49-3-205(1), MCA, by refusing to allow Petitioners to participate in the political debates held within these public buildings and thereby discriminating against Petitioners based upon their political ideas. The Montana University System argues that the Montana Human Rights Commission provides the proper forum for Petitioners to vindicate their state law discrimination claims. We agree.
¶38 Section 49-2-509(7), MCA, provides in pertinent part:
[t]he provisions of this chapter establish the exclusive remedy for acts constituting an alleged violation of chapter 3 or this chapter, including acts that may otherwise also constitute a violation of the discrimination provisions of Article II, section 4, of the Montana constitution or 49-1-102. (Emphasis added).
The statute requires Petitioners to file a formal complaint with the Montana Human Rights Commission (MHRC) alleging a violation of Chapter 3 of Title 49 of the Montana Code Annotated before they can proceed with a discrimination claim in district court. Sections 49-2-509(7), 49-2-501, MCA. Section 49-3-205(1), MCA, can be found in Chapter 3 of Title 49. In light of Petitioners’ failure to file a complaint with the MHRC, we conclude that the District Court properly granted Defendant’s motion to dismiss Petitioners’ state law discrimination *12 claim. See Dupuis v. Board of Trustees, 2006 MT 3, ¶¶ 17-19, 330 Mont. 232, ¶¶ 17-19, 128 P.3d 1010, ¶¶ 17-19. We earlier had affirmed a district court’s order dismissing plaintiffs’ § 1983 claims in Shields v. Helena School Dist. No. 1, 284 Mont. 138, 149-50, 943 P.2d 999, 1005-06 (1997), where discrimination formed the gravamen of the amended complaint brought under § 1983 and the Individuals with Disabilities Education Act and the plaintiffs had failed to exhaust available administrative procedures under the MHRA.
¶39 A party normally need not exhaust available state administrative remedies before seeking to vindicate a federal constitutional or statutory right through a § 1983 action filed in federal or state court. Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 500-16, 102 S. Ct. 2557, 2559-68 (1982). Here, however, Petitioners have failed to present a viable claim of political discrimination under federal law that they can vindicate pursuant to § 1983. At best, Petitioners have alleged a claimed violation of the antidiscrimination provisions contained in § 49-3-205(1), MCA, or violations of various provisions of the Montana Constitution. Petitioners first must exhaust available administrative remedies before pursuing a state law discrimination claim in district court. Section 49-2-509(7), MCA. Petitioners’ failure to exhaust available administrative remedies precludes them from bringing a viable claim in district court.
¶40 B. Did Petitioners state a claim under 42 U.S.C. § 1985, the Voting Rights Act of 1965, or a common law conspiracy claim against Montana University System?
¶41 Petitioners supplemented the conspiracy claim statement quoted in ¶ 27 above by stating that the “conspiracy consists of denying candidates JONES and KELLEHER the right to tell voters gathered” in a public debate how to solve Montana’s problems. The Second Amended Complaint does not develop further any of the conspiracy claims.
¶42 The plaintiff carries the burden to plead adequately a cause of action. Maney v. Louisiana Pacific Corp., 2000 MT 366, ¶ 28, 303 Mont. 398, ¶ 28, 15 P.3d 962, ¶ 28. Although we construe pleadings liberally, we have said that “a complaint must state something more than facts which, at the most, would breed only a suspicion that plaintiffs have a right to relief. Liberality does not go so far as to excuse omission of that which is material and necessary in order to entitle relief.” Maney, ¶ 28.
¶43 To prove a conspiracy claim under 42 U.S.C. § 1985, a plaintiff must show that some “ ‘racial, or perhaps otherwise class-based, *13 invidiously discriminatory animus’ ” lay behind the conspirators’ action and that the conspiracy was aimed at interfering with plaintiffs private and publicly protected rights. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68, 113 S. Ct. 753, 758 (1993) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798 (1971)).
¶44 A common law conspiracy occurs in Montana when a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. Schumacker v. Meridian Oil Co., 1998 MT 79, ¶ 18, 288 Mont. 217, ¶ 18, 956 P.2d 1370, ¶ 18. We also have established that it is not the conspiracy itself, but the torts committed or the wrong done in furtherance of the conspiracy that give rise to a conspiracy claim. Schumacker, ¶ 18.
¶45 Petitioners’ Second Amended Complaint omits that which is material and necessary to demonstrate that they are entitled to relief. The Second Amended Complaint fails to allege that Petitioners are members of a suspect class in support of a § 1985 claim. The Second Amended Complaint similarly fails to make any allegations that the Montana University System conspired for an illegal purpose. Finally, the Second Amended Complaint is void of any facts whatsoever that would sustain a claim under the Voting Rights Act of 1965. The sole reference to the Act appears in the sentence quoted in ¶ 27 above.
¶46 Even when viewed in the light most favorable to Petitioners, the asserted facts would, at most, breed only a suspicion that Petitioners may have a right to relief. Thus, we affirm the District Court’s decision to grant Montana University System’s motion under Rule 12(b)(6), M.R.Civ.P., for failure to state a claim under 42 U.S.C. § 1985, the Voting Rights Act of 1965, and common law conspiracy. ¶47 C. Whether Petitioners Have Standing to Bring a Claim on Behalf of “91,989 Montana Hungry Unregistered Minors.”
¶48 Petitioners purport to bring the “second cause of action” on behalf of “91,989 Montana hungry unregistered minors.” Standing represents a “ ‘threshold requirement of every case.’ ” Armstrong v. State, 1999 MT 261, ¶ 4, 296 Mont. 361, ¶ 4, 989 P.2d 364, ¶ 4 (quoting Matter of Paternity of Vainio, 284 Mont. 229, 235, 943 P.2d 1282, 1286 (1997)). Consequently, parties cannot waive objections to standing and this Court may address the standing requirement sua sponte. Armstrong, ¶ 4. A party must demonstrate a personal stake in the outcome of the controversy and some injury that would be alleviated successfully by maintaining the action to satisfy the standing requirement. In re B.F., 2004 MT 61, ¶ 15, 320 Mont. 261, ¶ 15, 87 P.3d 427, ¶ 15. We have *14 applied the general rule regarding standing that “a litigant may only assert his own constitutional rights or immunities.” In re B.F., ¶ 16; see also 16 C.J.S. Constitutional Law § 114 (2005).
¶49 We note that the alleged “hungry minors” possess neither a stake in the outcome of Petitioners’ Second Amended Complaint alleging various civil rights violations nor have suffered any injury that Petitioners’ Second Amended Complaint would alleviate. And by their very designation of being “unregistered” to vote, minors had no stake in the outcome of Petitioners’ requests for injunctive relief. Further, our general rule prohibiting a third party from asserting constitutional rights on behalf of others forbids Petitioners from acting on the minors’ behalf in this instance. In re B.F., ¶ 16.
¶50 In light of the fact that “91,989 Montana hungry unregistered minors” lack standing, and that Petitioners cannot assert an action on their behalf, we order “91,989 Montana hungry unregistered minors” stricken from the caption in this case. We conclude that the District Court properly dismissed the portion of Petitioners’ Second Amended Complaint designated as “second cause of action” based upon the Petitioners’ lack of standing to assert the constitutional rights of others. See Fleenor v. Darby School District, 2006 MT 31, 331 Mont. 124, 128 P.3d 1048 (affirming the district court’s dismissal of complaint because plaintiff lacked standing).
¶51 Affirmed.
CHIEF JUSTICE GRAY, JUSTICES LEAPHART and WARNER concur.