FILED

12/31/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0233

DA 24-0233

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 323

FLATHEAD PROPERTIES, L.L.C., a WA L.L.C.,

        Plaintiff and Appellant,

   v.

FLATHEAD COUNTY, a POLITICAL SUBDIVISION
OF THE STATE OF MONTANA,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-21-817
Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Charles W. Schuyler, Charles W. Schuyler, P.C., Missoula, Montana

       For Appellee:

       James H. Goetz, Trent M. Gardner, Henry J.K. Tesar, Goetz, Geddes &
Gardner, P.C., Bozeman, Montana

Submitted on Briefs:  October 23, 2024

Decided:  December 31, 2024

Filed:

_____
                   Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Flathead Properties, L.L.C. (Appellant) appeals the April 3, 2024 Order of Dismissal with Prejudice entered by the Eleventh Judicial District Court, Flathead County. The Order granted Flathead County's M. R. Civ. P. 12(b)(6) motion to dismiss.

¶2 We restate the issue on appeal as follows:

*Whether the District Court erred by granting Flathead County's M. R. Civ. P. 12(b)(6) motion to dismiss.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Appellant owned a peninsula-shaped tract of land along the shoreline of Flathead Lake. During a few months of the year, the water level would rise and cut off the end of the peninsula from the rest attached to shore, creating an island. In 2011, Appellant applied for, and was granted, a permit from the Flathead County Planning and Zoning Office to construct a bridge to connect the island to the peninsula. The bridge would only be used during those months the water level rose to create the island.

¶4 The Community Association for North Shore Conservation (C.A.N.S.C.) filed an action against the County in the District Court asking the court to void approval of the permit. The group alleged the permit did not take into consideration the Montana Lakeshore Protection Act. Appellant intervened in the action and continued to build the bridge. The District Court held the permit was void ab initio. The court ordered Appellant to remove the bridge and restore the area to its natural state. On appeal to this Court, we upheld the District Court's Order in *Cmty. Ass'n for N. Shore Conservation, Inc. v. Flathead Cnty.*, 2019 MT 147, 396 Mont. 194, 445 P.3d 1195.

2

¶5 After this Court's decision, Appellant asserted a claim for inverse condemnation against the County. Appellant claimed it had a vested property interest in the bridge once it was built, pursuant to § 75-7-206, MCA, and the Court could not retroactively take away its vested right. Appellant asserted removal of the bridge by court order amounted to a taking, and the County owed Appellant reasonable compensation.

¶6 The County filed a 12(b)(6) motion to dismiss for failure to state a claim. The County argued that because the District Court found the permit was void ab initio, Appellant never had a vested property interest to begin with. Additionally, the County asserted inverse condemnation does not apply to this situation because Appellant cannot prove the County acted to take or damage Appellant's property for public use. The County asserts the bridge removal was not for public use nor a public improvement, rather it was to comply with the Montana Lakeshore Protection Act.

¶7 The District Court granted the County's motion dismiss on April 3, 2024, agreeing with the County that as the permit was void ab initio, it was as if the permit never existed and therefore could never have given Appellant a property interest in the bridge.

## STANDARD OF REVIEW

¶8 This Court reviews a district court's ruling on a M. R. Civ. P. 12(b)(6) motion to dismiss de novo. *Marshall v. Safeco Ins. Co.*, 2018 MT 45, ¶ 6, 390 Mont. 358, 413 P.3d 828. When reviewing an order dismissing a complaint under M. R. Civ. P. 12(b)(6), we construe the complaint in the light most favorable to the plaintiff. *Marshall*, ¶ 6. The district court must not dismiss a complaint for failure to state a claim, "unless it appears

3

beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Marshall*, ¶ 6.

¶9 "A motion to dismiss under M. R. Civ. P. 12(b)(6) has the effect of admitting all well-pleaded allegations in the complaint." *Puryer v. HSBC Bank USA, N.A.*, 2018 MT 124, ¶ 10, 391 Mont. 361, 419 P.3d 105. When considering the motion, "all allegations of fact contained therein are taken as true." *Puryer*, ¶ 10. "Dismissal is proper under M. R. Civ. P. 12(b)(6) if the plaintiff would not be entitled to relief based on any set of facts that could be proven to support the claim." *Puryer*, ¶ 10 (citation omitted).

## DISCUSSION

¶10 *Whether the District Court erred by granting Flathead County's M. R. Civ. P. 12(b)(6) motion to dismiss.*

¶11 A claim is subject to dismissal if it is insufficient as pled to state a cognizable claim entitling the claimant to relief. M. R. Civ. P. 12(b)(6). "A claim is subject to dismissal only if it either fails to state a cognizable legal theory for relief or states an otherwise valid legal claim but fails to state sufficient facts that, if true, would entitle the claimant to relief under that claim." *Puryer*, ¶ 12. M. R. Civ. P. 8(a) and 12(b)(6) have liberal pleading requirements, but they do not excuse the omission of material and necessary facts that entitle relief. *Puryer*, ¶ 12. The complaint must state more than facts that "would breed only a suspicion" that the claimant is entitled to relief. *Jones v. Mont. Univ. Sys.*, 2007 MT 82, ¶ 42, 337 Mont. 1, 155 P.3d 1247.

¶12 Because this case comes to us following a M. R. Civ. P. 12(b)(6) dismissal, the factual record is not developed, and we take all well-pled allegations from Appellant's

4

complaint as true. We make no judgments on whether Appellant's claims could win at trial or survive a motion for summary judgment after further development of the factual record. This Court has not yet considered whether reliance on a faulty permit allows recovery under § 75-7-206, MCA, as Appellant asserts. With that in mind, we consider whether Appellant's claims, as pled, are sufficient to survive a 12(b)(6) motion to dismiss.

¶13 Article II, Section 29, of the Montana Constitution states "[p]rivate property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner." A condemnation occurs when the government, via its eminent domain powers, first initiates proceedings to take property and compensate the owner. *Hamlin Constr. & Dev. Co. v. Mont. DOT*, 2022 MT 190, ¶ 17, 410 Mont. 187, 521 P.3d 9. Inverse condemnation refers to a legal action brought by a property owner after the government has impinged upon the plaintiff's property interests, even without a formal exercise of the power of eminent domain. *Hamlin*, ¶ 17. "A plaintiff's success on an inverse condemnation claim depends upon whether the plaintiff can show that the challenged government action amounts to a taking or damaging in the constitutional sense." *Hamlin*, ¶ 17.

¶14 The initial consideration for an inverse condemnation claim is whether the government's actions constituted the taking or damaging of property for public use. *Wittman v. City of Billings*, 2022 MT 129, ¶ 16, 409 Mont. 111, 512 P.3d 1209. "[A] property owner may recover in an inverse condemnation action where actual physical damage is proximately caused to his property by a public improvement as deliberately planned and built." *Wittman*, ¶ 17 (internal quotations omitted.) Thus, in an inverse

condemnation claim, a plaintiff must prove: (1) the public improvement was deliberately planned and built; and (2) the public improvement proximately caused damage to the plaintiff's property. *Wittman*, ¶ 17; *Deschner v. State*, 2017 MT 37, ¶ 22, 386 Mont. 342, 390 P.3d 152.

¶15 Generally, government licenses or permits do not give rise to a protected property interest, and a lost opportunity to obtain a permit does not amount to a taking of compensable property. *Helena Sand & Gravel, Inc. v. Lewis & Clark County Planning & Zoning Comm'n*, 2012 MT 272, ¶ 45, 367 Mont. 130, 290 P.3d 691. However, a constitutionally protected property interest exists where property is owned in fee and the citizen has the right to use, exclude, transfer, or dispose of the property. *Helena Sand & Gravel*, ¶ 46.

¶16 Here, Appellant's complaint asserted it obtained a vested property right in the bridge as a physical structure under § 75-7-206, MCA, which states "[w]ork or development authorized or approved under this part shall not create a vested property right in the permitted development other than in the physical structure, if any, so developed." Appellant asserted the statute protects one who builds a permitted physical structure, as authorized under the Montana Lakeshore Protection Act, from a later adverse ruling that revokes a permit. Appellant claims on appeal that § 75-7-206, MCA, provides relief for loss of vested rights in a physical structure because otherwise "such a loss would always happen due to a revocation/loss of permit as suffered by" appellant. Thus, according to appellant, the remedial provision of § 75-7-206, MCA, applies even when the permit is

6

later revoked. According to Appellant's complaint, the forced removal of its bridge resulted in a taking of its vested property right and requires just compensation.

¶17 We find there are sufficient facts and allegations to support a claim for inverse condemnation to survive dismissal under a 12(b)(6) motion to dismiss. Appellant relied on the County's permit to construct its bridge. Once the bridge was constructed, Appellant presumably owned the bridge in fee and had the right to use, exclude, transfer, or dispose of the property; thus, when the facts in Appellant's complaint are taken as true, Appellant seemingly had a constitutionally protected property interest in the bridge itself. The County's failure to ensure the permit abided by the Lakeshore Protection Act resulted in the District Court ordering Appellant to remove the bridge and restore the area to its natural state—which Appellant did in 2023.

¶18 Appellant asserts on appeal that the first element of inverse condemnation is satisfied because the County intentionally approved construction of the bridge, and in doing so, created a public improvement. Appellant asserts the bridge was a public improvement in that only permitted structures along the Montana Lakeshore are in the public interest. Appellant also asserts the bridge increased the property's value and tax base, which is a recognized public goal. Thereby, the County created a public improvement through the bridge via its increase in property values sufficient to establish a basis for the first element of inverse condemnation.

¶19 Appellant also claims the removal of the bridge caused damages to its property, which supports the second element of inverse condemnation. Without addressing the

merits of the case, we conclude Appellant has sufficiently pled enough to withstand M. R. Civ. P. 12(b)(6) standards for an inverse condemnation claim.

¶20     Although our case law has recognized a distinction between inverse condemnation claims and takings claims,[1] we address in the alternative whether appellant's complaint meets the 12(b)(6) requirements under a takings analysis as appellant briefly referenced a taking in its complaint, albeit under the heading of its inverse condemnation claim. The District Court ruled on the 12(b)(6) motion under the assumption the permit was void ab initio, thus never reaching the complaint. As such, we find it relevant to address a takings analysis as well.

¶21     "Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred." *HS&G*, ¶ 43. It depends "on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." *HS&G*, ¶ 43.

¶22     Here, appellant's complaint asserts it had a vested property right in the bridge, as described above. Additionally, appellant asserted the bridge added value to its property and the removal of the bridge thus deprived appellant of all use of the bridge. Appellant's complaint also asserts it relied on the County's permit to expend money and construct its

---

[1] *See Egan Slough Cmty. v. Flathead Cnty. Bd. of Cnty. Comm'rs*, 2022 MT 57, ¶ 82, 408 Mont. 81, 506 P.3d 996 (noting Appellant's "reliance on *Knight* is misplaced. *Knight* is an inverse condemnation case, not a regulatory takings case. Inverse condemnation occurs when a public improvement, deliberately planned and built, proximately causes damage to the plaintiff's property.") (referring to *Knight v. Billings*, 197 Mont. 165, 642 P.2d 141 (1982)).

bridge. Finally, appellant asserts the County deliberately issued the permit which later turned out to be faulty. As such, we find the facts asserted by appellant's complaint are also sufficient to withstand a 12(b)(6) dismissal under a regulatory takings analysis.

**CONCLUSION**

¶23 After reviewing the record, we find Appellant's complaint contains sufficient facts to support a claim of inverse condemnation, or in the alternative a regulatory takings claim, at the M. R. Civ. P. 12(b)(6) stage. Accordingly, the District Court erred by granting the County's motion to dismiss.

¶24 Reversed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE